M. J. YOUNG, Guardian, et als., v. P. B. KENNEDY et als.

*Executors and Administrators—Counsel Fees—Insanity—Taxes— Scale—Equitable Set-off—Exceptions.*

1. Executors and administrators are allowed reasonable attorney's fees for advice and assistance in managing the trust estate, and this even when they are employed to defend a suit for a settlement by the *cestuis qui* trust, if such services are proper and necessary.

2. So where services were rendered by an attorney, which were paid for out of the trust money by an administrator who was afterwards judicially declared to be insane at the time the services were rendered, the disbursement will be allowed, in the absence of any allegation that the services of the attorney were not necessary.

3. An administrator will not be allowed, on the settlement of his administration account, with taxes which he has paid on the lands which descended to the heirs.

4. Where collections were made by an administrator in 1862 and 1863, and afterwards paid out, the scale must be applied to the receipts at the time the money was received, and to the payments when they were made.

5. Where one of the distributees dies before a settlement, and the administrator pays a portion of the fund for the support of one of the next of kin of the dead distributee, he is entitled in equity to a credit for this amount in an action by the administrator of the deceased distributee, if there are no creditors.

6. An exception to the report of a referee will not be considered, when it is vague and indefinite, and imposes on the Court the necessity of an examination of the entire record to find out its meaning.

7. Where certain land lying in another State was sold to pay debts by an administrator in that State, and there was a surplus, as to which the Court finds as a fact that it was not received by the administrator in this State nor by any authorized agent of his, it does not constitute assets with which the administrator should be charged.

(*Hester* v. *Hester*, 3 Ired. Eq. 9; *Whitford* v. *Foy*, 65 N. C., 265; *Ransom* v. *McClees*, 64 N. C., 17; *Carr* v. *Askew*, 94 N. C., 194; *Baker* v. *The Railroad*, 91 N. C., 308, cited and approved).

Civil action, heard by *MacRae, Judge*, upon exceptions to the report of a referee, at May Term, 1886, of Iredell Superior Court.

Both parties appealed.

The facts appear in the opinion.

*Mr. E. L. Gaither*, for the plaintiffs.

*Messrs. D. M. Furches* and *John Devereux, Jr.*, for the defendants.

Smith, C. J.    Thomas M. Young died in 1860, intestate, and A. L. Young took out letters of administration on his estate. He left a widow, Margaret J. Young, and two children, Mary and Thomas M. Young, junior.    Mary died in 1862, aged seven years, and her distributive share in her father's estate was distributable between her mother and brother Thomas M. and J. H. Stewart, a maternal half brother, born of a previous marriage.    The present action was begun on July 29th, 1876, for an account and settlement of the intestate's personal estate, in the name of the said Thomas M., by the said Margaret J., who had become his guardian, and such proceedings were had therein, that in the fall of 1878, judgment was recovered by the plaintiff for the sum of $2,945$\frac{44}{100}$, with interest thereon from the commencement of the action, and costs.    At Fall Term, 1879, Philip B. Kennedy, who, upon an inquisition and finding of his lunacy, had been appointed guardian to said administrator, was permitted to become a party to the action, and on his application

the said judgment was vacated, the Court finding and declaring that the said A. L. Young then was, and for fourteen years had been of unsound mind, and incompetent to manage his own affairs.   At the same time a second order of reference was made to J. B. Connelly, who had reported the former account, to take and state it anew.   In May, 1880, J. M. Howard, who had become administrator of the said Mary, and the said Margaret J. in her own right, were admitted as co-plaintiffs in the action.

At August Term, 1882, the order of reference was amended by adding R. A. McLaughlin as an associate referee, and they reported the account at Fall Term, 1883.

To this report exceptions were filed by both parties, and from the adverse rulings upon them by the Court, they respectively appeal, and ask for a reviewal.   The plaintiffs' exceptions are first to be considered.

I.  The defence to the suit, terminating in the judgment subsequently set aside for the lunacy of the administrator, was conducted by J. E. Kerr, an attorney employed by J. D. McNeily, the intestate's brother-in-law, and $100 paid him for his services.

The voucher for this disbursement was admitted as a credit by the referees and disallowed by the Court, upon the ground of the mental incapacity of the administrator to confer authority upon the agent, assuming to act as such, to bind him, or to use the trust fund in payment.

It is not pretended that the services were not rendered, or that they were not needed, or that the charge therefor is unreasonable.  Reasonable fees paid counsel for advice and assistance in the management of a trust, and this even in meeting a demand, by action, for a settlement, when necessary, are allowed to the trustee.   *Hester* v. *Hester*, 3 Ired. Eq., 9; *Whitford* v. *Foy*, 65 N. C., 265.

Nor do we feel the force of the objection founded on the incapacity of the administrator to enter into a valid contract.   The services rendered were not officious, and it is but reasonable, as the trust estate had the benefit of them, that it should be charged

therewith in reimbursement of the money advanced, and this upon the higher ground of the necessity of protecting the estate. We reverse the ruling of the Judge, and reinstate the credit.

II. The plaintiffs' second exception is overruled by the Judge in the Court below, and rests upon the following facts: In the division of the shares between the tenants in common, the share allotted to the said Margaret J. was in value $550 in excess of the other two shares, and was charged therewith. This sum was extinguished by being used in the payment of the allowance of the years provisions to her, to complete which, $105 more was paid in money. The administrator should be credited with $655, their added amount, and charged with the first mentioned sum— the difference being the money paid, and the result the same as if that alone stood on the credit side of the account, as the only item in the transaction. But the estate is enlarged by the use of the sum due in the division of the shares, and in the distribution the said Margaret J. gets the benefit of one-third, and the others the benefit of the two-thirds of this augmentation of the distributable estate. The adjustment between them will be effected by transferring the one-third of the sum from the account of said Margaret J. to the shares of the other two distributees, whereby she will have received none, and they all of the charged excess. The interest will of course follow the principal money.

III. The charge for taxes assessed upon descended lands of the intestate since his death, are without the sphere of representative duty, and do not belong in the administration account.

IV. The objection to the application of the scale to certain receipts has little support in the facts found by the Judge. He states that the collections were made in 1862 and 1863, when it was not imprudent to receive Confederate money, and the disbursements are presumed to have been made in currency, at that time.

V. The referees charge J. H. Stewart with, and allow the administrator for various sums expended in his education, and for other necessary purposes. The Judge confirms this action

of the referees, and overrules the plaintiffs' exception thereto. Strictly speaking, whatever is due to the deceased distributee, Mary, should be paid to her administrator, the plaintiff, J. M. Howard, and his disposition of the fund recovered would be the subject of an account of his administration. But the administrator, A. L. Young, aware of the fact that the distributee, Mary, had no debts to pay, and that her share, when passing into her administrator's hands, would at once be distributable among her next of kin, has advanced moneys in support of one of them, her said half-brother; and the referees, as her administrator is before the Court to be bound by what is done, have sub-divided her share of her father's estate, and have charged against the distributee's portion, the expenditures made on his behalf. Her admistrator would, if payment were made to him, be called on to pay over to her distributees, and under such circumstances we do not see why the adjustment may not at once be made, instead of compelling the first administrator to resort to an action to get it back. Why make him pay it, when it is to be paid back to him? We think this course is sanctioned, as convenient in practice, and in accord with the provisions and purposes of The Code. *Ransom* v. *McClees,* 64 N. C., 17; *Carr* v. *Askew,* 94 N. C., 194; *Baker* v. *Railroad,* 91 N. C., 308.

VI. The sixth exception is withdrawn.

VII. The seventh objection is wanting in precision of statement, and is not properly presented, and we do not entertain it, for the reason given by the Judge, that it imposes upon the Court the necessity of an exploration of the record to find out its import and bearing.

VIII. For a like reason this exception is not considered.

IX. The subject matter embraced in the 9th exception is disposed of in what we have said in regard to the 5th exception, and we reverse the ruling of the Court, and sustain that of the referees.

We proceed now to an examination of the defendants' exceptions, and the action of the Court upon them.

I. This exception to the reduction of the defendants' credits by the application of the scale, was properly overruled by the Court, as the payments were made in 1862, and are presumed to have been made in the currency then in use.

II. The subject matter of this is embraced in the second of the plaintiffs' exceptions, and is already disposed of in our ruling · upon that.

III. The remaining exception, sustained by the Court, is to the defendants' being charged with the proceeds of sale of lands of his intestate in the State of Missouri by the public administrator, for payment of a debt, the residue of which was received. The purchasers at the sale agreed to increase the sum bid, and to pay $1,225.80, and on May 15th, 1874, he paid to J. D. McNeely, acting for the administrator, $612.90, and gave his note for a like sum to the said administrator. The note was afterwards endorsed by the administrator to McNeely, and to him the money due thereon was paid. This money was applied to certain store accounts due by the administrator to the firm of Walton & Ross, and that of McNeely & Walton, whereof the said agent was a member. The Court finds that the money was not received by the administrator, was not a part of the personal estate of the intestate, Thomas M., nor was it collected by any authorized agent. It does not therefore constitute assets for which he is accountable to the plaintiffs in this action, and was properly eliminated from the account. We concur in this ruling of the Court.

The account will be re-formed in accordance with this opinion, and in order thereto will be referred to the Clerk, and when so re-formed judgment will be entered.

*It is so ordered.*

#### DEFENDANTS' APPEAL.

This was the defendants' appeal in the preceding case, and was argued at the same time and by the same counsel.

SMITH, C. J. The rulings upon the several exceptions taken both by the plaintiff and defendant and brought up for review are so connected that we have passed upon them all in disposing of the plaintiffs' appeal.

It is not needful to say any more.

When upon the reference the account is re-formed according to this opinion, final judgment will be entered.

*It is so ordered.*