MARTHA WYCKOFF and ELIZABETH WYCKOFF

*v.*

WILLIAM O'NIEL, executor of Mary E. Harris, deceased.

[Decided June 22d, 1906.]

1. Where there has been a final decree in a suit to compel distribution of an estate by the orphans court on the accounting of the executor, such final account is conclusive on the parties in interest, as provided by *P. L. 1898 p. 761 § 127.*

2. The orphans court has full jurisdiction, on the application of any party in interest, to make a just distribution of the assets of an estate in accordance with the directions of the testatrix's will, and to enforce its decrees with like effect to those of a court of chancery, as authorized by *P. L. 1898 p. 781 § 173.*

3. The orphans court has jurisdiction of an action by legatees against the executor to recover legacies, as authorized by *P. L. 1898 p. 787 § 192.*

4. While the court of chancery has equitable jurisdiction of a suit by legatees to recover their legacies, notwithstanding the pendency of the probate proceedings in the orphans court, such jurisdiction will not be exercised unless special cause exists therefor.

5. Where complainants were both pecuniary and residuary legatees, they were not entitled to maintain a bill against the executor to compel payment of their pecuniary legacies only.

6. All the residuary legatees named in a will are necessary parties to a suit in equity by two of them to compel distribution and payment of their legacies.

Heard on bill and demurrer.

This is a bill filed by Martha and Elizabeth Wyckoff against William O'Niel, executor of Mary E. Harris. Mary E. Harris was the aunt of the complainants. In her will, of which O'Niel is the executor, she gave many legacies to various institutions and persons, among such legacies being one of $5,000 to the complainants, to be equally divided between them; and to the complainants, together with several others named, she left all the residue and remainder of her estate. She died on the 17th day of August, 1904, and her will was probated in the county of Warren. The inventory and assessment filed in the surrogate's office of that county showed the personal estate of the testatrix to be the sum of $25,768.16.

The bill charges that on the 8th of November, 1905, the executor, having collected all the moneys belonging to the estate, and having paid all the debts, made and exhibited in the surrogate's office the final account of himself as said executor, showing a balance in hand to distribute of $23,191.98; that the complainants filed exceptions to the allowance of the said account, which came on to be heard before the orphans court of the county of Warren, which said court, by its decree made on the 2d day of February, 1906, sustained certain of the exceptions and dismissed the others; and that, as the result of said decree, there now remains in the hands of the said executor the sum of $23,000, which is more than sufficient to pay all of the pecuniary legacies in the said will bequeathed.

The bill charges that the executor should have paid the legacies to the complainants, and to the other legatees standing on the same footing, at the end of one year from the date of the death of the testatrix, and that interest therefor is recoverable from such date.

The bill further charges that the executor pretends that it is his duty to settle, in the proper probate court of Pennsylvania, in the county of Northampton, his account with respect to moneys due the estate under mortgages upon lands in the State of Pennsylvania, and that he cannot safely pay the legacies and

make final settlement without having such administration in the State of Pennsylvania. But the complainants insist that the executor has collected all the said moneys on the mortgages in the State of Pennsylvania, and has brought such moneys into this state and deposited them to his credit as executor in this state and accounted for them in his final account aforesaid.

The complainants charge that this court has jurisdiction to compel the said executor to pay over to them the amount of the legacy of $5,000 before mentioned and interest on the principal thereof, if there be sufficient in his hands with which to pay interest thereon, and on all other legacies of a similar character.

The sole defendant is the executor of the estate.

To this bill the executor files a demurrer, and states as his reasons:

*First.* That no reason appears in the said bill why the complainants should resort to a court of chancery for the relief prayed. For a recovery of their specific legacies they have an action at law. For distribution of the estate in full, the orphans court of the county of Warren has full jurisdiction.

*Second.* If the said bill states a sufficient reason for resorting to the court of chancery to settle the estate of the decedent, then all the residuary legatees of said testatrix should have been made parties to the bill.

*Third.* That the complainants have no right to limit their bill to the recovery of their specific legacies, with interest, they being residuary legatees also, and it being their duty, if they bring a suit of this nature, to include all of their claims in one suit.

*Fourth.* That it appears from the bill that ancillary administration upon this estate was necessary in Pennsylvania, and the defendant cannot safely pay legacies until his account in that state has been settled and due order made thereon for the distribution of the assets collected therein.

*Mr. William H. Morrow,* for the complainants.

*Mr. Joseph H. Wilson* and *Mr. Gilbert Collins,* for the defendant.

GARRISON, V. C. (after stating facts).

While it is undoubtedly true that the court of chancery of New Jersey has all of the ancient equitable jurisdiction with respect to the administration of estates, and is a proper forum in which to bring an action for the recovery of a legacy, it is equally true that where the administration of an estate is proceeding in the probate courts, the court of chancery will not interfere unless special cause and good reason be shown therefor. *Salter* v. *Williamson,* 2 *N. J. Eq.* (*1 Gr. Ch.*) *480* (*Chancellor Pennington, 1841*); *Van Mater* v. *Sickler,* 9 *N. J. Eq.* (*1 Stock.*) *483* (*Chancellor Williamson, 1853*); *Clarke* v. *Johnston,* 10 *N. J. Eq.* (*2 Stock.*) *287* (*Chancellor Williamson, 1854*); *Frey* v. *Demarest,* 16 *N. J. Eq.* (*1 C. E. Gr.*) *236* (*Chancellor Green, 1863*); *Hoagland* v. *Titus,* 39 *N. J. Eq.* (*12 Stew.*) *298* (*Court of Errors and Appeals, 1884*); *Borough of Rutherford* v. *Alyea,* 54 *N. J. Eq.* (*9 Dick.*) *411* (*Court of Errors and Appeals, 1896*); *Bird* v. *Hawkins,* 58 *N. J. Eq.* (*13 Dick.*) *229* (*Vice-Chancellor Grey, 1889*).

As was said in *Salter* v. *Williamson, supra* (at *p. 490*): "Until the final decree of the orphans court, there is no legal impediment in the way of this court taking cognizance of the case, if they think proper so to do," but (*Van Mater* v. *Sickler, supra*) "it is not the right of the party to change the forum of settlement at his pleasure. The chancellor must exercise his discretion and judge as to the propriety of the court of chancery's interposing."

There has been a final decree in this suit by the orphans court upon the accounting of this executor. Under the provisions of the Orphans Court act such final account is conclusive. *P. L. 1898 p. 761 § 127.* That court has ample jurisdiction, upon the application of any party in interest, to make just distribution in accordance with the directions of the will of the testatrix, and to enforce its decrees with like effect to those of the court of chancery. *P. L. 1898 p. 781 § 173.* Furthermore, legatees may now sue for legacies in the orphans court, where the proceedings are in all respects governed by the rules and practice of the court of chancery in similar suits. *P. L. 1898 p. 787 § 192.*

Under these circumstances, and in the present state of the law, I cannot see that the complainants in this suit have shown any need to come into a court of equity to secure their rights. The complainants do not suggest any special cause or good reason why the matter is not proceeded with in an orderly way in the orphans court, which, as has just been shown, has full jurisdiction.

I think that if they show no need of equity, it may properly be said that their bill shows a want of equity, even if it be true that the case is cognizable in equity, if the chancellor, in his discretion, determines to entertain it.

To properly administer the relief asked for by the complainants it would be necessary to take over the accounting and final distribution from the point it has now reached in the orphans court. In no other way could this court determine whether the interest demanded by the complainants was payable to them. If this accounting and final settlement were taken over, as stated, then I think that all of the parties interested are proper and necessary parties to this suit.

Furthermore, these complainants are by their bill shown to be, together with others, residuary legatees of this estate. I think that they should include all of their claims as legatees against this estate in one suit, and should not be permitted to split them up into several suits. If this is so, then, of course, the other residuary legatees are necessary parties to a suit for the ascertainment and distribution of the residuary estate. *Read* v. *Patterson, 44 N. J. Eq. (17 Stew.) 217 (Court of Errors and Appeals, 1888)*. They are not parties to this bill.

In conclusion, I think it only necessary to say that this court has, from the earliest reported cases, shown a disinclination to take over from the orphans court, when the latter was properly proceeding, matters entirely within its jurisdiction, and which may, in most instances, be much better dealt with in that court. This tendency is, and undoubtedly should be, strengthened by the increasing jurisdiction that has been, and is constantly being, given to the orphans court.

The original papers, the parties and the proper judicial ma-

chinery to administer the rights are all present in the counties in which the orphans courts are situated, and unless a complainant clearly exhibits to the court of chancery that, by reason of some complication, intricacy or lack of jurisdiction in the orphans court, the case requires the aid of a court of equity, in my view the latter court should discourage applications to it, and should leave the parties in the court of first jurisdiction, from which they may, in the event of its erring, appeal eventually to the same court from which appeals lie from this court.

For the reasons indicated, I will sustain the demurrer.